# The United States Court of Federal Claims

No. 12-62C
(Filed:  April 2, 2013)
**Opinion Originally Filed Under Seal on March 29, 2013**

```
* * * * * * * * * * * * * * * * * * * *
                                      *
TIGERSWAN, INC.,                      *
                                      *
                                      *
               Plaintiff,             *
                                      *
                                      *
v.                                    *
                                      *
THE UNITED STATES,                    *
                                      *
               Defendant.             *
                                      *
* * * * * * * * * * * * * * * * * * * *
```

**Breach of Contract; Bid Protest;
Termination for Convenience; Implied
Duty of Good Faith and Fair Dealing;
Bad Faith**

*Terrence M. O'Connor*, McLean, VA, for plaintiff.  *Stephanie D. Wilson* and *Kathryn M. Lipp*, McLean, VA, of counsel.

*John Sinclair Groat,* U.S. Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, and *Jeanne E. Davidson*, Director, for defendant.  *Robert B. Neill* and *CPT Michael E. Barnicle*, U.S. Army Legal Services Agency, Arlington, VA, of counsel.

## O P I N I O N

**FIRESTONE**, *Judge*

This case involves various non-commercial item procurement contracts for certain Iraq-based security services that had been sought by the Department of Defense ("DOD") to support the Task Force for Business and Stability Operations ("TFBSO"), a command resource established by the DOD to promote economic stabilization in Iraq and

Afghanistan.  DOD awarded two contracts to TigerSwan, Inc. ("the plaintiff" or

"TigerSwan"), but then terminated each for convenience.  During this period, DOD

awarded sole-source contracts for the work to the incumbent, Aegis Defence Services,

Ltd. ("Aegis").  The plaintiff alleges that these actions by DOD give rise to a breach of

contract claim for improper termination for convenience on the ground that DOD

improperly steered TigerSwan's contract work to Aegis.  The plaintiff also alleges that

DOD's actions were taken "in connection" with procurements and seek bid preparation

costs.

Specifically, the plaintiff asserts a breach of contract claim under the Contract

Disputes Act ("CDA"), 41 U.S.C. § 7101 et seq. and the Tucker Act, 28 U.S.C. § 1491(a)

(2012), arising from the termination for convenience of the last contract awarded to

TigerSwan.  For its breach of contract claim, the plaintiff seeks $238,352.72 for lost

anticipatory profits and $35,539.06 for line of credit interest.  In its second claim, brought

under 28 U.S.C. § 1491(b), TigerSwan alleges that the DOD violated federal statutes by

cancelling the solicitations under which TigerSwan was awarded its two contracts and in

awarding sole-source contracts for the same underlying work to Aegis.  With regard to its

bid protest claim, the plaintiff seeks bid and proposal costs of $92,697.10 and $28,038.09

for the first and second contracts respectively.

Pending before the court is the government's motion for judgment on the

pleadings[1] seeking to dismiss TigerSwan's claims.  The government argues that since

---

[1] The government initially filed a motion to dismiss for failure to state a claim upon which relief
can be granted pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal

TigerSwan has not alleged that the government terminated its contracts for convenience with the intent of harming the plaintiff, TigerSwan has failed to allege the "bad faith" necessary to establish a breach of contract for improper or wrongful termination for convenience.  For this reason, the government argues, TigerSwan has not stated a claim for breach of contract.

With regard to the bid protest claim under section 1491(b), the government seeks dismissal on the grounds that TigerSwan did not incur and cannot seek bid preparation costs for the sole-source contracts awarded to Aegis—a point TigerSwan acknowledges. The government argues that TigerSwan cannot obtain bid preparation costs for contracts it received.  For this reason, the government argues that TigerSwan has failed to state a claim upon which relief can be granted under 28 U.S.C. § 1491(b).

For the reasons discussed below, the government's motion for judgment on the pleadings is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.      **FACTUAL BACKGROUND AND TIGERSWAN'S CLAIMS
        BEFORE THIS COURT**

Unless noted, all facts are taken from the pleadings and attached exhibits.  All facts uncontested unless stated.

---

Claims ("RCFC").  See Def.'s Mot., ECF No. 22.  The government, however, did not assert this defense in its answer, rendering its motion improper.  See RCFC 12(b) ("A motion asserting any of these defenses [including a 12(b)(6) defense] must be made before pleading if a responsive pleading is allowed.").  RCFC 12(h)(2)(B) provides, however, that the defense of failure to state a claim upon which relief can be granted may be raised by an RCFC 12(c) motion for judgment on the pleadings.  In such circumstances, courts consider improperly filed motions to dismiss as motions for judgment on the pleadings.  See, e.g., Peterson v. United States, 68 Fed. Cl. 773, 776 (2005) (construing a motion to dismiss for failure to state a claim filed after the answer as a motion for judgment on the pleadings).  This is more a matter of form over substance since courts still apply the applicable standards of a 12(b)(6) motion to dismiss to a 12(c) judgment on the pleadings.  Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009).

A.    **The 6001 contract for security and protection services in Iraq and its termination**

On June 22, 2006, the DOD created the TFBSO which is described as "a command resource in direct support of the economic line of operation with the Combatant Commander's Campaign Plan, with 400 highly qualified business specialists and government personnel supporting military and civil affairs units, provincial reconstruction teams, Iraqi Security Forces, and senior Government of Iraq officials." Pl.'s Ex. 1, 6001 contract 31, ECF No. 1-3.  In support of its goal of Iraqi "economic stabilization," TFBSO functions, in part, to provide security services to facilitate investment and commerce in the county.  Id.  The DOD held a full and open competition for a non-commercial item contract, designated as contract number W91GDW-10-C-6001 (the "6001 contract").  The objective of the 6001 contract was to:

> provide all resources, including experienced multi-disciplined security personnel, equipment, weapons, armored vehicles, mobilization multiple self-sustaining life support camps (Basra, Baghdad, and two optional additional locations), surge capability, security and intelligence analysis, incidental deliverable, and project management necessary to ensure the security and safety of TFBSO personnel and sponsored visitors operating throughout all regions of Iraq.

Pl.'s Ex. 1, 6001 contract 31.  The competition was conducted between January 31, 2010 and February 27, 2010.  The DOD awarded the 6001 contract to TigerSwan on March 1, 2010 in the amount of $3,949,791.35 for a 183-day performance period.  AR 764.  The base period was to run from June 25, 2010 to December 24, 2010 with an option period running from December 25, 2010 to June 24, 2011.

Following the award to TigerSwan, two unsuccessful bidders sought to have the award set aside.  On March 10, 2010, nine days after TigerSwan received the 6001 contract award, Aegis filed a bid protest before the Government Accountability Office ("GAO").  AR 857.  Another unsuccessful bidder on the 6001 contract, AISG/Patriot Group Partnership, protested before the United States Court of Federal Claims ("CFC").  The DOD terminated the 6001 contract for convenience on April 23, 2010, before either the GAO or the CFC addressed the merits of the protests.  The DOD determined that the situation in Iraq had changed such that it no longer needed many of the line items and services required by the 6001 contract.  TigerSwan submitted a letter to the DOD on May 3, 2010 protesting the termination for convenience of the 6001 contract.[2]  Subsequently, on May 23, 2010, TigerSwan submitted its damages claim to the DOD in relation to the 6001 termination for convenience in the amount of $56,246.24.[3]

### B.     The 6005 contract for security and protection services in Iraq, the two Aegis bridge contracts, and Aegis's GAO protest

On June 7, 2010, nearly two weeks after the termination for convenience of the 6001 contract, the DOD issued a new solicitation for contract number W91GDW-10-C-6005 (the "6005 contract").  Due to time constraints, the DOD limited the competition to the vendors that previously submitted proposals for the 6001 contract, including TigerSwan and Aegis, and provided only five days to submit bid proposals (extended

---

[2] TigerSwan was unable to provide the May 3, 2010 letter and additionally asserts its belief that the Contracting Officer never issued a response to that letter.

[3] On September 24, 2010, TigerSwan and the DOD eventually settled for the full amount requested by TigerSwan and the agreement was reduced to writing as Modification Number P00005 to the 6001 contract.  Pl.'s Ex. 6, Modification P00005, ECF No. 1-8.

from two days).  AR 937, 997.  The period of performance was 220 days.  The DOD

received three proposals.  TigerSwan proposed a price of $5,878,082.44, Aegis proposed

a price of $8,754,411, and a third offeror proposed a price of $15,940,217.35.  TigerSwan

was awarded the 6005 contract on June 24, 2010.  AR 1181.

Between June 19, 2010 and June 22, 2010, prior to the June 24, 2010 contract

award to TigerSwan, the DOD executed a Justification and Approval for Other than Full

and Open Competition (the "June 19 Aegis Bridge Contract J&A") to allow Aegis, the

incumbent, to continue performing under a thirty-day sole-source bridge contract from

June 25, 2010 to July 24, 2010.  Pl.'s Ex. 8, June 19 Aegis Bridge Contract J&A, ECF

No. 1-10.  In the June 19 Aegis Bridge Contract J&A, the DOD reasoned that there

existed "Only One Responsible Source" as justification for the bridge contract to Aegis.

Id. at 1.  It further stated:

> AEGIS, as the current incumbent, is the only contractor able to meet the
> requirement of 25 Jun 2010 and be 100% ready to perform.  While a
> limited competition procurement amongst contractors who had previously
> submitted offers on security services for TFBSO is being solicited the
> process will not be completed in time to begin service on 25 Jun 2010. . . .
> The incumbent contractor has both the manpower in Iraq that is readily
> available and the required [] training to operate as the provider of TFBSO
> [Personal Security Detail] services.

Id. at 1-2.  Ms. Regina A. Dubey, the DOD's Program Director for the TFBSO, was the

first signatory for the June 19 Aegis Bridge Contract J&A.

On July 2, 2010, Aegis filed a protest before the GAO in connection with

TigerSwan's 6005 contract award.  AR 1243.  The DOD received the notice of protest

three days later on July 5, 2010 and issued a stop work order to TigerSwan for the 6005

contract work on the same day.  While Aegis's protest was pending before the GAO, on

July 20, 2010[4] the DOD prepared a Sole Source Justification for Simplified Acquisition

Under The Test Program For Commercial Items (the "July 20 Aegis Bridge Contract

J&A"), allowing Aegis to continue performance on the underlying work for four months

beginning July 25, 2010 (the day after the June 19 Aegis Bridge Contract J&A was to

expire) through November 24, 2010.  Pl.'s Ex. 9, July 20 Aegis Bridge Contract J&A 2,

ECF No. 1-11.  The July 20 Aegis Bridge Contract J&A was again signed by Ms. Dubey.

On October 1, 2010 the GAO issued a decision denying Aegis's 6005 contract

award protest.  Notwithstanding the GAO's denial of Aegis's protest, the DOD

terminated TigerSwan's contract for convenience on October 9, 2010.  The notice of

termination stated only that the 6005 contract "shall be terminated for the Government's

convenience."  Pl.'s Ex. 10, Notice of Termination for Convenience, ECF No. 1-12.

TigerSwan contends that the notification contained no further justification for the

termination for convenience.[5]

---

[4] In its complaint, TigerSwan states that the July 20 Aegis Bridge Contract J&A, was issued on
August 3, 2010.  Compl. ¶ 31.  The July 20 Aegis Bridge Contract J&A, however, has six
signatures dated between July 20, 2010 and July 27 2010.  Pl.'s Ex. 9, July 20 Aegis Bridge
Contract J&A 2-3.  The court notes, moreover, that the latter three signatures are dated in June
rather than in July but will assume, absent reason to believe otherwise, that the dates were
mistakes.

[5] On October 21, 2010, TigerSwan submitted a settlement proposal for $92,949.09, reserving its
right to bring a contractual claim regarding the 6005 contract termination for convenience.  Pl.'s
Ex. 11, Memo for Record, Contract Modification, ECF No. 1-13.  TigerSwan subsequently
submitted a revised settlement proposal for the 6005 contract adding ten percent for general and
administrative costs for a total of $98,111.85.  On October 30, 2010, the DOD released a final
settlement invoice concluding that TigerSwan's proposal was reasonable.  TigerSwan did not
sign the 6005 Settlement Modification until January 14, 2011.  TigerSwan reserved its right to
appeal, which was acknowledged by the DOD in an email exchange.

### C.      The sole-source award to Aegis

At some point on or around October 25, 2010, the DOD prepared and approved

another Justification and Approval for Other than Full and Open Competition ("October

25, 2010 J&A") to justify the award of a sole-source commercial item contract to Aegis,

Contract Number W91GDW-11-C-9000 ("Aegis sole-source contract").  AR 1575.  The

October 25, 2010 J&A concluded that Aegis was the only contractor that could meet the

DOD's requirements for the 6005 contract work because TigerSwan could not perform

within the allotted performance period as a result of Aegis's unsuccessful GAO protest:

> AEGIS, the current incumbent, is the only contractor able to meet the
> requirement by 25 November 2010 and be 100% ready to perform.  The
> current sole source contract performance began on 25 July 2010 and expires
> on 24 November 2010.  It served as a bridge to continue services until a
> GAO protest was resolved for the previously completed contract for PSD
> service.  The previous contract was awarded to TigerSwan Inc. on 24 June
> 2010.  The contracting officer received notice of a protest on 2 July 2010
> and issued a Stop Work Order to TigerSwan Inc. on 5 July 2010.  Due to
> the protest, TigerSwan Inc. could not continue mobilizing nor continue
> services as originally planned.

Pl.'s Ex. 13, October 25, 2010 J&A 1, ECF No. 1-15.  It also stated that the timeframe

and costs associated with mobilizing the workforce justified the sole-source award to

Aegis.  The October 25, 2010 J&A also reflected the DOD's concern that TigerSwan's

abilities to attract and retain a sufficient work force and to develop the relationships

necessary to adequately perform the contract's requirements were adversely affected by

the limited time remaining on the original 6005 contract.  The Aegis sole-source contract

was awarded on November 16, 2010 for a two-month performance period from

November 25, 2010 to January 21, 2011.

The October 25, 2010 J&A cited FAR § 13.501(a)(ii) and 10 U.S.C. § 2304(g)(1)(B) as authority to award a sole-source contract.  Although the DOD designated the Aegis sole-source contract as a firm-fixed price contract, it included line items that were cost-reimbursement items and one item that was a cost-plus-percentage of cost item.  In the justification document for the Aegis sole-source contract, the DOD concluded that market research was "N/A."  The October 25, 2010 J&A was signed by Ms. Dubey.

### D.     TigerSwan's FOIA request and claims before the DOD

On November 1, 2010, TigerSwan filed a Freedom of Information Act ("FOIA") request in an effort to discover additional reasoning behind the DOD's termination of its contracts.  It sought a range of documentation including email, letters, memoranda, reports, and surveys relating to the terminations.  A month later, on December 2, 2010, in response to the FOIA request, the DOD provided only a single redacted email, which was the email notifying TigerSwan of the DOD's decision to terminate the 6005 contract. TigerSwan had already received this document within the course of the DOD's previous contract administration.  On December 17, 2010, TigerSwan appealed the DOD's response to the FOIA request.

On November 3, 2010, TigerSwan submitted a breach of contract claim to the Contracting Officer ("CO") asserting its belief that the terminations for convenience of the 6001 and 6005 contracts were an abuse of discretion and made in bad faith.  The claim sought (1) labor and legal costs related to the alleged bad faith in the 6005 contract termination for convenience; (2) an updated 6001 contract invoice seeking additional

labor costs; and (3) an updated invoice for the 6005 contract.  On January 3, 2011, TigerSwan received the December 22, 2010 CO's decision on the claim, which granted the labor and legal costs related to the 6005 termination for convenience claim but denied the second two claims.

That same month, on January 20, 2011, TigerSwan sent the CO a demand for reconsideration and added new information and damages to its claim.  In this reconsideration demand, TigerSwan alleged inconsistencies in the October 25, 2010 J&A and alleged that the DOD improperly steered contractual work to Aegis through the sole-source award.  On February 2, 2011, the CO denied TigerSwan's claims.  On June 2, 2011, TigerSwan once again filed a claim alleging breach of contract while detailing bad faith and improper handling of the 6005 contract.  TigerSwan also alleged in this claim before the CO a conflict of interest between the DOD and Aegis, which called into question the October 25, 2010 J&A's validity and subsequent sole-source contract to Aegis.  Specifically, TigerSwan alleged an improper conflict of interest stemming from a relationship between Ms. Dubey and an Aegis team leader, Mr. Anthony Shopland, assigned to the TFBSO team.  On July 11, 2011, the DOD responded to the June 2, 2011 claim stating that it would not consider or provide a decision on the claim because the alleged facts were known or should have been known at the time of the January 20, 2011 claim.

TigerSwan filed the present action before the CFC on January 30, 2012.  Oral argument on the briefing was held on March 20, 2013.

### E.      TigerSwan's breach of contract claim

In its complaint, TigerSwan alleges that the DOD, "through a continuum of offending and unreasonable conduct[,] endeavored to give Aegis, rather than [TigerSwan], the benefits of the work to be performed under the 6001 and 6005 contracts that had been awarded to [TigerSwan]" in breach of the implied duty of good faith and fair dealing.  Compl. ¶ 94.  The termination for convenience of TigerSwan's 6001 contract, according to TigerSwan, was "an apparent attempt to give Aegis a second chance at winning the award in an open competition."  Compl. ¶ 95.  Similarly, it alleges that the DOD's decision to terminate TigerSwan's 6005 contract for convenience, rather than lift the stop work order following Aegis's unsuccessful bid protest, constituted a breach of contract.  Compl. ¶ 96.

TigerSwan further alleges that the sole-source award to Aegis violated various provisions of the FAR and other federal law.  Compl. ¶ 97.  TigerSwan claims that the DOD failed to "mitigate or even address an improper conflict of interest that existed between the Agency and Aegis."  Compl. ¶ 97.  TigerSwan alleges that all of these steps were taken specifically to ensure that Aegis retained the work otherwise awarded to TigerSwan under the 6001 and 6005 contracts.  Compl. ¶ 97.  TigerSwan seeks $238,352.72 for lost anticipatory profits and $35,539.06 in interest charges in connection to the 6005 contract.

### F.      TigerSwan's bid protest claim

TigerSwan also alleges that the cancellation of the solicitations that led to the award of the 6001 and 6005 contracts and the subsequent sole-source awards to Aegis

give rise to a claim under this court's bid protest jurisdiction.  "As a result of the

Agency's improper sole-source award to Aegis, [TigerSwan] seeks recovery of its bid

and proposal costs for the 6001 and 6005 contracts, in the amount of $92,697.10 and

$28,038.90, respectively."  Compl. ¶ 112.  TigerSwan makes multiple allegations of the

DOD's failure to follow the Federal Acquisition Regulation ("FAR") and other

applicable provisions in its justification of the sole-source contract to Aegis, which

TigerSwan contends was arbitrary, capricious, an abuse of discretion, and in violation of

law.  Compl. ¶¶ 105-108.  TigerSwan also claims that the alleged improper relationship

between Ms. Dubey and Mr. Shopland resulted in a manipulation of the 6001 and 6005

contracts and subsequent sole-source award to Aegis.  Compl. ¶¶ 102-104.

## II.    DISCUSSION

### A.    Standard of Review

A motion for judgment on the pleadings may be made "[a]fter the pleadings are

closed—but early enough not to delay trial. . . ."  RCFC 12(c).  Judgment on the

pleadings is appropriate where there are no material facts in dispute and the moving party

is entitled to judgment as a matter of law.  Forest Labs., Inc. v. United States, 476 F.3d

877, 881 (Fed. Cir. 2007).  When considering a defendant's motion for judgment on the

pleadings, the court "must assume each well-pled factual allegation to be true and indulge

in all reasonable inferences in favor of the nonmovant. . . ."  Crusan v. United States, 86

Fed. Cl. 415, 418 (2009) (quoting Owen v. United States, 851 F.2d 1404, 1407 (Fed. Cir.

1988)).  The court does not accept, however, assertions that amount to legal conclusions.

Garner v. United States, 85 Fed. Cl. 756, 758-59 (2009).  "A motion for judgment on the

pleadings should be denied unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim." Id. (quoting Branning v. United States, 215 Ct. Cl. 949, 950 (1977) (discussing a predecessor rule to RCFC 12(c))).  The trial court's belief that the plaintiff is unlikely to prevail at trial should not color its ruling on a motion for judgment on the pleadings.  Owen, 851 F.2d at 1407.

As stated supra, courts apply the same standard for a motion for judgment on the pleadings as they would for a 12(b)(6) motion to dismiss in cases where the latter is "converted" into the former.  Although facts are to be construed in favor of the plaintiff, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted).  This requires the plaintiff to set out enough facts to state a claim to relief that is plausible on its face.  Cary v. United States, 552 F.3d 1373, 1376 (citing Twombly, 550 U.S. at 547).  The plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In re Bill of Lading Transmission and Processing Sys. Patent Lit., 681 F.3d 1323, 1331 (Fed. Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### B.   Terminations for convenience and the implied duty of good faith and fair dealing

Before turning to the government's motion for judgment on the pleadings, the court will first examine the legal context for challenging terminations for convenience and for establishing breach of contract claims based on violations of the implied duty of good faith and fair dealing—the two legal bases for the plaintiff's breach of contract claim.  With this legal context established, the court will then turn to whether the plaintiff has made sufficient allegations to survive the government's motion under the applicable 12(b)(6) standards discussed above.

### 1.   Legal standards for showing that a termination for convenience was improper

The government's right to terminate a contract for convenience without giving rise to a breach of contract claim has its roots in military contracts.  Specifically, it developed as a mechanism by which the government could avoid large, unneeded military procurements upon cessation of war and other hostilities.  Krygoski Const. Co. v. United States, 94 F.3d 1537, 1540 (Fed. Cir. 1996).  Terminations for convenience are now widely used across a range of military and civilian contracts.  Because a proper termination for convenience does not constitute a breach of contract, it limits the monetary recovery a contract awardee can collect.  Best Foam Fabricators, Inc. v. United States, 38 Fed. Cl. 627, 637 (1997).  Specifically, under the FAR, the contract awardee may not recover anticipatory or consequential damages following a termination for convenience.  FAR §§ 49.202, 52.249-1 to 52.249-5.  Instead, the government is liable only for the contract awardee's partial performance up to the time of the termination for

convenience and certain other costs delineated by law or by the contract's termination

clause. See Rice Sys., Inc. v. United States, 62 Fed. Cl. 608, 620 n.15 (2004) (citations

omitted).

The Federal Circuit—and the former Court of Claims—have recognized that an

improper termination for convenience may give rise to a breach of contract claim when

the agency (1) terminates the contract in bad faith or (2) abuses its discretion in its

decision to terminate the contract. T & M Distribs., Inc. v. United States, 185 F.3d 1279,

1283 (Fed. Cir. 1999); Krygoski, 94 F.3d at 1541; Caldwell & Santmyer, Inc. v.

Glickman, 55 F.3d 1578, 1581 (Fed. Cir. 1995); see also Kalvar Corp. v. United States,

211 Ct. Cl. 192, 204 (1976). If a contractor can demonstrate that the agency's

termination for convenience was improper, the contractor will not be limited to damages

identified in the termination for convenience clause. Keeter Trading Co. v. United States,

79 Fed. Cl. 243, 263 (2007). In such a case, traditional common law damages for breach

of contract will be available to the contractor. See Best Foam, 38 Fed. Cl. at 637-38.

Contractors face a high burden of proof for demonstrating an agency acted in "bad

faith" by terminating the contract for convenience. T & M Distribs., 185 F.3d at 1285.

To establish a breach based on bad faith in this context, the contractor must present clear

and convincing evidence that the government's termination was made with the "intent to

injure" the contractor. Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234,

1239-40 (Fed. Cir. 2002).

In determining whether the CO clearly" abused its discretion" in terminating a

contract for convenience, the court will consider four factors: (1) the CO's bad faith, (2)

the reasonableness of the decision, (3) the amount of discretion delegated to the CO, and (4) any violations of an applicable statute or regulation.  See Keco Indus., Inc. v. United States, 492 F.2d 1200, 1203-04 (Ct. Cl. 1974).

Finally, in addition to the foregoing grounds for breach, the Federal Circuit has recognized that the government may be liable for breach of contract for an improper termination for convenience when the government "contracts with a party knowing full well that it will not honor the contract." Krygoski, 94 F.3d at 1543-44 (quotations and citations removed).  In such circumstances, government knowledge that it will not honor the contract is a prerequisite to such a claim. Caldwell, 55 F.3d at 1582 (citing Salsbury Indus. v. United States, 905 F.2d 1518, 1521 (Fed. Cir. 1990)).

### 2.       Legal standard for showing a breach of the implied duty of good faith and fair dealing

A claim for breach of contract based on breach of the implied duty of good faith and fair dealing is distinct from a claim for breach of contract based on an improper termination for convenience.  The implied duty of good faith and fair dealing is inherent in every contract. Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005). The duty requires that each party "do everything that the contract presupposes should be done by a party to accomplish the contract's purpose." Stockton E. Water Dist. v. United States, 583 F.3d 1344, 1365 (Fed. Cir. 2009) (citations and internal quotations omitted). In other words, a party must not "act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." Centex, 395 F.3d at 1304.

16

In deciding whether there was a breach of this duty, the court examines the circumstances surrounding the alleged breach.  Fireman's Fund Ins. Co. v. United States, 92 Fed. Cl. 598, 675 (2010) (citing C. Sanchez & Son v. United States, 6 F.3d 1539, 1542 (Fed. Cir. 1993)).  Parties can show a breach of the implied duty of good faith and fair dealing by proving lack of diligence, negligence, or a failure to cooperate.  See Malone v. United States, 849 F.2d 1441, 1445 (Fed. Cir. 1988).  As this court has recently held, proof of "bad faith" is not required to show a breach of the implied duty of good faith and fair dealing in most cases.  D'Andrea Bros. LLC v. United States, 96 Fed. Cl. 205, 222 n.24 (2010); see also Centex, 395 F.3d at 1304-06; Rivera Agredano v. United States, 70 Fed. Cl. 564, 574 n.8 (2006).  Evidence of government intent to harm the contractor is not ordinarily required.

Importantly, where the contract authorizes the government to take action that may harm the contractor, the government may exercise that right without triggering a claim for breach of good faith and fair dealing.  Scott Timber Co. v. United States, 692 F.3d 1365, 1375 (Fed. Cir. 2012) ("[T]he assertion of a legitimate contract right cannot be considered as violative of a duty of good faith and fair dealing.") (quoting David Nassif Assocs. v. United States, 644 F.2d 4, 12 (Ct. Cl. 1981)).  Put another way, if the government has the contractual right to terminate a contract for convenience, the government may exercise that right without breaching the duty of good faith and fair dealing.  The government will be liable for breach of contract only if the termination for convenience was improper under the standards set forth above.

17

### C.   TigerSwan alleges sufficient facts in its complaint to support a claim for breach of contract based on an improper termination for convenience of the 6005 contract.

The government argues that TigerSwan has failed to state a breach of contract claim for wrongful termination for convenience on the grounds that TigerSwan has not specifically alleged that the DOD terminated its contracts with an intent to harm plaintiff. As such, the government contends, TigerSwan has failed to allege the "bad faith" necessary to state such a breach of contract claim.  Relatedly, the government argues that the plaintiff's reliance on the standards for a breach of the implied duty of good faith dealing to state a claim is misplaced.  The government argues that the plaintiff cannot rely on the standards for the breach of the implied duty of good faith and fair dealing to support a wrongful termination for convenience contract breach claim.  Specifically, the government contends that where the government is authorized to terminate a contract for convenience a claim for breach based on the termination for convenience arises only when the decision was made for the specific purpose of harming the plaintiff.  The government concedes that its motion thus turns on whether allegations of intent to harm plaintiff by specific actions must be alleged to state a claim for breach of contract in connection with a termination for convenience.

The plaintiff, in response, argues that allegations of specific intent to harm plaintiff are not required.  Rather, it claims that it has stated a breach claim based on allegations of unreasonable behavior by the government under the implied duty of good faith and fair dealing or in the alternative based on allegations that the government

abused its discretion by terminating the contracts or never intended to honor its contract with TigerSwan.

To begin, the court agrees with the government that TigerSwan may not rely on the standards for breach of the implied duty of good faith and fair dealing as a basis for making a claim related to an improper termination for convenience.  See  Scott Timber Co. v. United States, 692 F.3d at 1375 quoted above.  The court disagrees, however, with the government's contention that allegations of intent to harm or animus toward the plaintiff are always required to establish a breach of contract claim based on an improper termination for convenience.

The Federal Circuit has recognized several circumstances where the government, in exercising its contractual right to terminate for convenience may be liable for breach of contract.  These circumstances certainly include situations in which the government has acted with animus toward the contractor but the Circuit has also recognized a potential breach claim where the government abused its discretion or never intended for the contract to go forward.  T & M Distribs., 185 F.3d at 1283; Krygoski, 94 F.3d at 1543-44. In those later situations, allegations of animus toward the plaintiff are not necessarily required.  For example, the "abuse of discretion" standard has been satisfied when the government has terminated a contract for convenience in order to get a better price for itself.  See e.g. Sigal Constr. Corp. v. General Services Admn., CBCA 508, 10-1 BCA ¶ 34,442 (May 13, 2010) (citing Krygoski, 94 F.3d at 1541).  Similarly, the Federal Circuit has indicated that a breach may arise when the government enters a contract without intending to allow the awardee to perform under the contract.  Krygoski, 94 F.3d at 1543-

19

45; Caldwell, 55 F.3d at 1582.  While these examples involve some form of "bad faith, " the "bad faith" does not necessarily involve an intent to harm the contractor.  Rather, the government may be liable for breach in situations where it took action at the expense of the plaintiff without necessarily acting with animus toward the plaintiff.  The court reads these precedents to include liability for a breach of contract based on an improper termination for convenience where the government has engaged in some form of improper self-dealing for its own benefit or to benefit another contractor.

Tested by these standards, TigerSwan has alleged sufficient facts to demonstrate a potential breach of contract for improper termination for convenience based on the government's alleged "abuse of discretion" and failure to honor its contract with TigerSwan.  At the pleading stage, the court does not demand "the level of factual specificity" required to prove the case on the merits.  In re Bill of Lading, 681 F.3d at 1342.  Instead, as noted above, the plaintiff must only plead enough facts to enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).  The court here is less concerned with the complaint's "precise language" and instead determines whether the "facts, when considered in their entirety and in context, lead to the common sense conclusion" that the DOD breached its contractual duties by terminating TigerSwan's contracts.  Id. at 1343.  Here, the facts, as alleged in the complaint, demonstrate that the DOD engaged in a pattern of conduct to ensure that Aegis completed the contract notwithstanding the awards to TigerSwan.  The complaint alleges that prior to TigerSwan's award of contract 6005, the DOD already had a sole-source contract to Aegis in the works.  The June 19

20

Aegis Bridge Contract J&A stated that Aegis "is the only contractor able to meet the

requirement on 25 Jun 2010, and be 100% ready to perform."  Pl.'s Ex. 8, June 19 Aegis

Bridge Contract J&A 1.  The June 19 Aegis Bridge Contract J&A further stated, in

recognition of the ongoing 6005 contract solicitation and impending award, that "the

[bid] process will not be completed in time to begin service on 25 June 2010," which was

apparently one day after TigerSwan won the 6005 contract work.  Moreover, the

complaint alleges that while the DOD issued a notice to proceed to TigerSwan to begin

work, it immediately rescinded that notice seemingly without regard to TigerSwan's

readiness to perform.  The allegations state that the DOD—knowing that it required the

underlying 6005 contract work complete—opted to execute the July 5, 2010 stop work

order in connection to TigerSwan's 6005 contract work rather than override the stay

issued in response to Aegis's July 2, 2010 GAO bid protest.  Thereafter, the DOD issued

a series of additional sole-source contracts to Aegis, culminating in the final sole-source

award to Aegis after Aegis lost its bid protest on the 6005 contract.  Drawing all

reasonable inferences in favor of TigerSwan, the court finds that TigerSwan has set forth

a sufficient factual basis to state a plausible claim for breach of contract based on an

improper termination for convenience.  Accordingly, the plaintiff must be given the

opportunity to present its case on the merits, Hall v. Bed Bath & Beyond, 705 F.3d 1357,

1364 (Fed. Cir. 2013) ("Whether the facts as plausibly pleaded can be proved is a matter

for trial.").  It is premature to dismiss the plaintiff's breach of contract claim.  The

government's motion for judgment on the pleadings of plaintiff's first claim is, therefore,

**DENIED**.

**D.**     **TigerSwan fails to state a claim upon which relief can be granted in connection with its bid protest claim.**

In regard to TigerSwan's bid protest claim, the government argues that TigerSwan fails to state a claim upon which relief can be granted under 28 U.S.C. § 1491(b) because TigerSwan cannot recover bid and proposal costs on contracts the government awarded to TigerSwan and then subsequently terminated for convenience.  The government argues that to the extent the plaintiff's bid protest claim is based on improper terminations for convenience, it must be brought under this court's contract dispute jurisdiction pursuant to section 1491(a) because bid protest claims under section 1491(b) must be "in connection with a procurement" and post-award terminations for convenience are not made in connection with a procurement.  In addition, the government argues, to the extent that TigerSwan's bid protest relies on the allegedly final sole-source award to Aegis, the plaintiff cannot recover its bid preparation costs because none were incurred.

The court agrees with the government that TigerSwan fails to state a claim upon which relief can be sought in connection to its bid protest claim.  At its core, TigerSwan's bid protest claim—apparently made in connection with the cancellation of the 6001 and 6005 contracts—rests on two basic grounds: (1) the improper terminations for convenience of the 6001 and 6005 contracts and (2) the arbitrary and capricious award of the final sole-source contract to Aegis.  Neither, taken alone or together, states a bid protest claim for which relief can be granted.

The improprieties TigerSwan alleges with regard to the DOD's management of the 6001 and 6005 contracts (i.e. the allegedly improper terminations for convenience) must,

as discussed above, be brought as breach of contract claims under 28 U.S.C. § 1491(a) rather than as part of a bid protest.[6] Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1017 (Fed. Cir. 1995) ("When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution. . . ."); see also Davis/HRGM Joint Venture v. United States, 50 Fed. Cl. 539, 546 (2001) (holding that a challenge to a termination for convenience does not fall within the CFC's bid protest jurisdiction); Griffy's Landscape Maint. LLC v. United States, 51 Fed. Cl. 667, 671-73 (2001).  The court agrees with the government that these claims may only be brought pursuant to 28 U.S.C. § 1491(a).

To the extent that TigerSwan's bid protest relies on alleged violations in connection to the final Aegis sole-source contract, the claim must also fail since the plaintiff neither seeks bid and proposal costs associated with that contract—as there were none—nor injunctive relief since performance on that contract is complete.  Accordingly the government's motion to dismiss TigerSwan's bid protest claim is **GRANTED**.

---

[6] Relatedly, TigerSwan lacks standing to protest the management of the 6001 and 6005 contracts because it was the eventual awardee for both.  See, e.g., Outdoor Venture Corp. v. United States, 100 Fed. Cl. 146, 152 (2011) ("Contract awardees . . . must instead bring contract claims pursuant to the Contract Disputes Act. . . ."); Diversified Maint. Sys., Inc. v. United States, 103 Fed. Cl. 431, 436-37 (2012) (holding that a contract awardee lacks standing to bring a bid protest in connection to its own contract unless the contract awardee challenges corrective action on the same contract).  Here, TigerSwan won the 6005 contract after the DOD took corrective action on the 6001 contract and there was no corrective action in connection with the cancellation of the 6005 contract.

**III.     CONCULSION**

For the foregoing reasons, the government's motion is **GRANTED-IN-PART**

and **DENIED-IN-PART**.  The parties shall have until **April 15, 2013** to file a joint status

report detailing next steps for resolving this litigation.

**IT IS SO ORDERED.**


                                                    s/Nancy B. Firestone
                                                    NANCY B. FIRESTONE
                                                    Judge