# In the United States Court of Federal Claims

No. 12-62C
(Filed: September 18, 2014)

| | |
|---|---|
| TIGERSWAN, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE UNITED STATES, )<br>)<br>Defendant. )<br>) | Motion for Summary Judgment;<br>Termination for Convenience;<br>Abdication of Contracting Officer's<br>Authority; Disputed Issues of Material<br>Fact |

*Terrence M. O'Connor*, McLean, VA, for plaintiff.  Stephanie D. Wilson, McLean, VA, of counsel.

*John Groat*, Civil Division, United States Department of Justice, Washington DC, with whom were *Stuart F. Delery*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Franklin E. White, Jr.*, Assistant Director, for defendant.  *Robert B. Neill*, United States Army Legal Service Agency, of counsel.

**O P I N I O N**

**FIRESTONE**, *Judge*.

Pending before the court are cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") filed by defendant the United States ("the government") and plaintiff TigerSwan, Inc. ("TSI").  In this case, TSI alleges that the United States Department of Defense ("DOD") wrongfully terminated for convenience its contract to provide security services to support the Task

Force for Business and Stability Operations ("TFBSO") in Iraq, resulting in a breach of contract.  TSI is seeking lost profits and other damages as a result of the alleged breach.

In its motion, plaintiff argues that the contracting officer abused his discretion when he permitted TFBSO to direct him to terminate the contract after a bid protest challenge by the incumbent, Aegis Defense Services, Ltd. ("Aegis"), failed.  TSI contends that the termination for convenience was inappropriately based on TFBSO's program decision to give a sole-source contract to Aegis.  In its cross-motion, the government argues that the contracting officer did not abuse his discretion in deciding to terminate TSI's contract but instead made a reasoned decision to defer to the stated needs of TFBSO, a subjective determination that the government argues is entitled to deference.  The government argues that the testimony of the program director of TFBSO demonstrates that the needs of the agency did not align with what TSI was able to provide.  For the reasons set forth below, the court finds that there are disputed issues of material fact that require denial of both motions.  Accordingly, the cross-motions are **DENIED**.

I.     **BACKGROUND**[1]

   A.  **The 6001 Contract**

On March 1, 2010, the DOD awarded TSI Contract No. W91 GDW-10-C-6001 ("6001 Contract") to provide security services to TFBSO, with a period from June 25,

---

[1] Many of the background facts are set forth in the court's earlier decision granting-in-part and denying-in-part the government's motion to dismiss and are only summarized here.  TigerSwan, Inc. v. United States, 110 Fed. Cl. 336 (2013).  In addition, the facts are undisputed unless otherwise noted.

2010 to December 24, 2010 and an option period from December 25, 2010 to June 24, 2011.  Administrative Record ("AR") 804.  This award was protested at the Government Accountability Office ("GAO") by the incumbent Aegis and another unsuccessful offeror.  On April 23, 2010, before the GAO issued a decision, the DOD terminated the 6001 Contract for convenience, stating that "significant changes in operational and force protection conditions in Iraq" meant that many of the line items and services included in the contract were no longer required.  AR 915-16.  The DOD paid for TSI's mobilization costs.  Compl. ¶¶ 20-22.  On June 7, 2010, the DOD issued a solicitation for a performance period of 220 days based on the changed requirements as Contract No. W91 GDW-10-C-6005 ("6005 Contract").  AR 937-96.  Competition was limited to vendors that had submitted proposals for the 6001 Contract.  Id.

While the solicitation was pending, the DOD issued a Justification and Approval for Other than Full and Open Competition ("J&A") for security services for the period from June 25, 2010 to July 24, 2010 to allow Aegis to continue performing.  Compl., Ex. 8.  The J&A was signed by the Senior Program Director of TFSBO, Regina Dubey ("Ms. Dubey") and stated that Aegis was the only contractor able to meet the performance deadline of June 25, as competition for the new contract would not be completed by that time.  Id.

    **B.  The 6005 Contract**

On June 22, 2010, after another round of evaluations, the DOD awarded the 6005 Contract to TSI and at the same time issued a notice to proceed.  AR 1181.  On June 23, 2010, Aegis filed a protest of the contract award at the GAO.  AR 1243-69.  On July 5,

2010, the DOD issued a stop work order to TSI. AR 1278. While the protest was pending, the DOD awarded a second sole-source bridge contract to Aegis for a period from July 25, 2010 to November 24, 2010. AR 1292-93.

On October 1, 2010, the GAO denied Aegis's protest and upheld the award of the 6005 Contract to TSI. AR 1348. Shortly thereafter, Contracting Officer Nathaniel Franz ("Mr. Franz" or "CO") communicated by email with TSI CEO Jim Reese ("Mr. Reese") about moving ahead with the contract. Pl.'s Mot. Summ. J., Ex. 3. On October 5, 2010, Mr. Franz contacted Ms. Dubey to determine when funding would be available to TSI. Pl.'s Mot. Summ. J., Ex. 4. On the following day, October 6, 2010, Mr. Franz made a presentation to Ms. Dubey and General Camille Nichols, the general in charge of the United States Central Command, Joint Theater Support Contracting Command, detailing the risks and benefits of allowing TSI to continue to proceed as opposed to retaining Aegis as a sole-source contractor. Pl.'s Mot. Summ. J., Ex. 5.

In support of upholding the award to TSI, the CO identified the major benefits as a $600,000 cost savings and additional flexibility along with upholding the GAO decision. Id. The major risks he identified included concerns over TSI's ability to mobilize quickly and loss of political capital with the customer, who desired to keep Aegis. Id. With regard to a sole-source award, to Aegis, the CO identified the benefit of such an award as continuity of services without the stresses of transition. Id. The major risks he identified included a TSI protest of the award, potential damages to TSI, and setting a standard of rewarding incumbent contractors for protesting follow-on contracts. Id. Overall, the CO recommended that TSI's contract go forward. Id.

The CO's recommendation was overruled, and on October 9, 2010, the 6005 Contract was terminated. Compl. ¶ 34. As before, TSI was reimbursed for its mobilization costs. Compl. ¶¶ 36-39. Following the termination, the CO issued a second J&A to support its decision to award a sole-source contract to Aegis. AR 1298-1301. In the J&A, the CO relied on Ms. Dubey to conclude that only the incumbent was able to meet the government's requirements to be ready to perform on November 25, 2010, that transition was risky at a time when the security situation in Iraq was deteriorating, that TSI's lack of existing relationships with Iraqi entities would adversely impact the mission, and that TSI would have difficulty attracting a quality workforce for the short duration of the contract. Id.

### C. Testimony

At his deposition, the CO, Mr. Franz, testified that he did not use any independent judgment to assess Ms. Dubey's conclusions regarding the risks of allowing TSI to perform the 6005 Contract. Pl.'s Mot. Summ. J., Ex. 6, Tr. 57:1-15. Additionally, he testified that he never spoke to TSI regarding its capabilities, including its workforce or relationships in the region. Id. at 66:12-67:6. Regarding the ability of TSI to meet the requirements to be ready to perform by November 25, 2010, he testified that the contracting office had received an estimate from ACOB of 45-60 days to receive arming authority, which would potentially exceed the timeline required by the contract. Id. at 70:2-14. While the previous contracting officer, Christopher Williams, testified that it was possible to expedite this process to less than 10 days as recently as August 29, 2010, AR 1318, Mr. Franz testified that he didn't believe such a process to be available at the

time of the 6005 Contract.  It is unclear how Mr. Franz's understanding accords with the email he received from Brian Sheehan, the Deputy Branch Chief of the contracting office, stating that ACOB had advised him that "if contracting can get the arming package to ACOB they can process it within 10 days."  Pl.'s Mot. Summ. J., Ex. 9.

At her deposition, Ms. Dubey also testified that she had not spoken with TSI, and further testified that she had based at least some of her conclusions—specifically, the ability to attract a quality workforce—on conversations with Aegis, the incumbent contractor.  Pl.'s Mot. Summ. J., Ex. 7, Tr. 97:7-98:9.

Additionally, Mr. Reese testified at his deposition that TSI had specific relationships with Iraqi regional and national government entities and a workforce plan that would have allowed it to complete the mission.  Pl.'s Mot. Summ. J., Ex. 10, ¶¶ 3-6.  Further, he testified that TSI had performed a large portion of the mobilization process and had expressly informed TFBSO that it would be able to meet the performance deadline.  Id. at ¶ 7.

Finally, with regard to Ms. Dubey's concerns regarding the risks associated with changing contractors while the situation in Iraq was deteriorating, the government now agrees that Ms. Dubey was mistaken and that the conditions in Iraq were, in fact, improving at the time.  Answer ¶ 68.  However, the government maintains that Ms. Dubey subjectively believed the situation to be deteriorating.

## II.   STANDARD OF REVIEW

The purpose of summary judgment is to determine whether there is a genuine issue for trial, and not "to weigh the evidence and determine the truth of the matter."

Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact is one that "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248. Even where parties have cross-moved for summary judgment, the court must evaluate each motion on its own merits, drawing reasonable inferences against the party whose motion is being considered. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

To establish a genuine issue of material fact, a party "must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." Radar Indus., Inc. v. Cleveland Die & Mfg. Co., 424 F. App'x. 931, 936 (Fed. Cir. 2011) (quoting SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985)) (internal quotation marks omitted). Where there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant. Unigene Labs., Inc. v. Apotex, Inc., 655 F.3d 1352, 1360 (Fed. Cir. 2011) (citing Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc., 520 F.3d 1358, 1360-61 (Fed. Cir. 2008)).

### III.   DISCUSSION

The Federal Circuit has recognized that a termination for convenience may give rise to a breach of contract claim in the very limited circumstances when "the agency (1) terminates the contract in bad faith or (2) abuses its discretion in its decision to terminate the contract." TigerSwan, 110 Fed. Cl. at 345 (citing T & M Distribs., Inc. v. United

7

States, 185 F.3d 1279, 1283 (Fed. Cir. 1999); Krygoski Const. Co. v. United States, 94 F.3d 1537, 1541 (Fed. Cir. 1996); Caldwell & Santmyer, Inc. v. Glickman, 55 F.3d 1578, 1581 (Fed. Cir. 1995); Kalvar Corp. v. United States, 211 Ct. Cl. 192, 204, 543 F.2d 1298 (1976)).  Here, plaintiff argues that the government is liable for breach of contract because the CO abused his discretion when he decided to terminate for convenience.  In evaluating a breach claim on this ground, the Federal Circuit has identified four factors for the court to consider: (1) subjective bad faith on the part of the CO, (2) the reasonableness of the decision, (3) the amount of discretion delegated to the CO, and (4) any violations of an applicable statute or regulation.  See Keco Indus., Inc. v. United States, 492 F.2d 1200, 1203-04 (Ct. Cl. 1974); see also England v. Systems Management American Corp., 38 F. App'x 567, 571 (Fed. Cir. 2002) (citations omitted).

Relying on these standards, the plaintiff argues that the CO abused his discretion when he: (1) abdicated his responsibility to make an independent decision to his customer, TFBSO, in contravention of the FAR and (2) accepted facts as true without any independent investigation.  In support, plaintiff relies on the deposition testimony of various individuals which, in plaintiff's view, establish that the CO admitted that he abdicated his authority to TFBSO when he elected to accept Ms. Dubey's version of the facts without undertaking an independent evaluation, even though he had reason to believe that her facts may not have been supported.  In this connection, plaintiff argues that the decision of the CO to terminate TSI was not motivated by facts but rather by Ms. Dubey's desire to retain the incumbent through a sole-source award.

In response, the government argues that it is entitled to summary judgment because the CO's decision to terminate for convenience is entitled to deference and must be upheld so long as the decision is "rational." According to the government, the CO may defer to the customer to determine whether the contract will satisfy its needs, and may terminate it for convenience without further inquiry if the customer determines that it will not. The government argues that the deposition testimony of Ms. Dubey establishes a subjectively rational basis for the CO decision to terminate the contract and that TSI's disagreement with Ms. Dubey's facts is not enough to demonstrate an abuse of discretion by the CO. Additionally, the government contends that TSI has not presented any facts to show that the CO acted with any subjective bad faith. The government argues further that there is no evidence to show that TSI's contract was terminated to get a better price or was awarded with the intent to never allow TSI to perform. As a result, the government argues that it is entitled to summary judgment on the grounds that TSI has failed to present sufficient facts to show that the decision to terminate the 6005 contract for convenience lacked any rational basis.

**A. The CO May Not Abdicate His Decision Making Authority to TFBSO**

Without question, a CO is granted a great deal of discretion in determining whether it is in the government's best interest to terminate a contract for convenience. However, while a CO is afforded wide discretion, he is still responsible for making an independent decision with regard to a contract. See FAR §§ 49.101(a)-(b) (stating that contracting officer has the authority to terminate contracts). As the Federal Circuit has stated, the CO must "'put his own mind to the problems and render his own decisions.'"

Pac. Architects & Eng'rs, Inc. v. United States, 491 F.2d 734, 744 (Ct. Cl. 1974) (quoting N.Y. Shipbuilding Corp. v. United States, 385 F.2d 427, 435 (1967)); see also Darwin Constr. Co. v. United States, 811 F.2d 593, 598 (Fed. Cir. 1987) (where the CO "never made a 'judgment as to the merits of the case,'" it constituted an "abdication of responsibility," though the court declined to sanction the abdication where administrative discretion existed (quoting Schlesinger v. United States, 390 F.2d 702, 709, 182 Ct. Cl. 571 (1968))). A review of the evidence presented in the motions establishes that the CO, Mr. Franz, did not "put his own mind" to the decision to terminate TSI but instead deferred entirely to others in TFBSO. Indeed, the government has conceded this point, arguing that Mr. Franz properly deferred his decision to Ms. Dubey on the grounds that she was better-versed in the facts regarding the performance of the contract. In his deposition, Mr. Franz stated as follows with regard to the decision to terminate:

> Q:   Okay. So, ultimately, whose decisions - - I guess who has the final say on which course of action is taken? Is that something that you have as a contracting officer, with the understanding that you get input from the customer, but was that your final decision?
>
> A [Mr. Franz]:   Um, no, I wouldn't say that's my final decision. I would say - -
>
> Q:   Who would you say has that - - who would you say has that final authority?
>
> A:   I guess we'll start at the top with General Nichols, but, again, her - - her decisions would have to have been scrubbed.
>
> If she came down with a decision that was contrary to law, she would have been notified several times throughout the chain. Colonel Nolan was very well versed on contracting regulations and law, and so was Colonel Uchimura, so . . . .

10

Pl.'s Mot. Summ. J., Ex. 6, Tr. 57:1-17.

In a situation where the contracting officer is given the ultimate discretion to make the decision, the CO's failure to make an independent decision weighs in favor of finding an abuse of discretion. See Keco, 492 F.2d at 1204 ("The third [criterion] is that the degree of proof of error necessary for recovery is ordinarily related to the amount of discretion entrusted to the procurement officials by applicable statutes and regulations."). While the government argues that it is appropriate for the CO to defer to the program, especially in times of war where issues of national security are implicated, the government does not provide any legal basis for permitting the CO to abdicate his decision-making authority. This is especially true where TSI had recently been selected through a competitive process which had determined that it was able to perform the contract—an award the DOD had just finished successfully defending in front of the GAO. Even if the CO believes that the opinion of the customer should be given a great deal of deference, he is still required to perform some investigation into the facts to determine their validity. Pac. Architects, 491 F.2d at 744. Mr. Franz noted this in his testimony, stating that while an investigation "should be part the customer providing information and the contracting officer verifying and also seeking information," he had "no recollection of . . . doing that investigation." Pl.'s Mot. Summ. J., Ex. 6, Tr. 66:12-67:6.

Because the CO admittedly did not make an independent judgment and relied instead on facts presented by others who similarly did not perform investigations into the facts, the court finds that the CO's reasons for termination are not entitled to the

deference typically afforded to CO decisions. See Pac. Architects, 491 F.2d at 744. Additionally, the court finds that the facts presented by plaintiff raise significant doubts as to the reasonability of the justifications underlying the decision to terminate. See Keco, 492 F.2d at 1203-04 ("A second [criterion] is that proof that there was 'no reasonable basis' for the administrative decision will also suffice, at least in many situations." (citing Continental Business Enterprises v. United States, 452 F.2d 1016, 1021, 196 Ct. Cl. 627, 637-38 (1971)))  As a result, the court finds that it is necessary to inquire into the objective facts to determine whether the justifications for the decision are supported.

This conclusion accords with another recent decision dealing with a similar issue, Gulf Group General Enterprises Co. W.L.L. v. United States, 114 Fed. Cl. 258 (2013). In Gulf Group, the plaintiff alleged that the terminations for convenience of three separate contracts were arbitrary, capricious, and an abuse of discretion. 114 Fed. Cl. at 267. In that case, the modifications that terminated two of the contracts stated that they were being canceled "by order" of the customer in one instance and "due to command directive" of the customer in the other. Id. at 375. Although the court found that the testimony was contradictory regarding who actually ordered the termination, id. at 376, the court inquired into the facts surrounding the decision and found that the record demonstrated that "none of the justifications presented to the court were reasonable or consistent with the government's obligation to act in good faith," id. at 409. Additionally, although the termination was justified by the government on the grounds of national security, the court found that there was no evidence that an investigation into the

alleged security incident was conducted and therefore found the termination to be arbitrary and capricious. Id. at 362. With regard to the third contract, the court found that the government had provided a reasonable, good-faith explanation in support of the termination and therefore found that the decision was not arbitrary and capricious. Id. Similarly to the former situation plaintiff in the present case has presented evidence suggesting that the record may not support the justifications given for termination. As a result, it is appropriate for the court to conduct an inquiry into the justifications for the termination. Eventually, however, plaintiff can prevail only if it establishes that the CO's termination decision was objectively not rational.

### B. Disputed Issues of Material Fact Preclude Summary Judgment for Either Party

The government bases its justification for terminating TSI's contract on the facts identified in the justification for sole-source award to Aegis. Indeed, as demonstrated by the October 6, 2010 presentation by the CO, it appears to the court that the two decisions were made simultaneously. The J&A for the sole-source award identifies four overarching reasons as to why TSI's contract needed to be terminated, all relying on Ms. Dubey. First, Ms. Dubey found that TSI would not be able to begin performance on November 25, 2010 due to potential issues in mobilization. Second, Ms. Dubey found that the underlying work had changed due to deteriorating security situations in Iraq. Third, Ms. Dubey found that the short period of time was not sufficient to form local relationships and connections, and that TSI's resulting lack of experience could harm the

mission.  Fourth, she found that TSI was unlikely to be able to attract a quality workforce due to the short period of performance.

The government argues that the deference that this court should award to TFBSO and Ms. Dubey entitles her subjective interpretation of the facts to deference, as well. According to the government, the actual status of the security situation in Iraq is irrelevant; rather, it is sufficient that Ms. Dubey actually believed that the security situation was deteriorating.  Further, the government argues that, so long as TFBSO subjectively believed that the circumstances of performance had changed in such a way that TSI could not meet the needs of TFBSO, a specific investigation into the facts underlying the justification for termination was not necessary.

The plaintiff argues that it was irrational for the CO to rely on Ms. Dubey's findings because the undisputed facts known at the time contradicted Ms. Dubey's understandings.  First, regarding TSI's ability to perform by the required date, plaintiff has presented evidence from Mr. Reese, the owner of TSI, that the DOD had express knowledge that TSI had already completed the largest portion of the mobilization process.  Additionally, TSI claims that members of the contracting office had confirmed that TSI would be able to perform.  For example, Mr. Sheehan, the Deputy Branch Chief of the contracting office, sent an email on October 6, 2010 to Mr. Franz stating that "[a]rming could be done in 25 days start to finish if everything runs smoothly."  Pl.'s Mot. Summ. J., Ex. 9.  Regarding the allegedly deteriorating situation in Iraq, the government has conceded that the security situation was improving rather than deteriorating, as claimed in the J&A.  Answer ¶ 68 (admitting that "Between June 24,

2010 and November 2010, the security situation in Iraq was not degrading; it was, in fact, improving," Complaint ¶ 68).  Regarding TSI's familiarity and experience, plaintiff claims that Ms. Dubey had no basis for her conclusion because neither she nor the CO ever contacted TSI to discuss the issue and therefore did not have any knowledge of plaintiff's relevant familiarity and experience.  Plaintiff claims that the undisputed evidence from Mr. Reece establishes that TSI did have the necessary familiarity and experience to carry out the contract, including relationships with various government entities in the relevant regions of Iraq.  Finally, regarding TSI's ability to attract a quality workforce, plaintiff claims that Ms. Dubey similarly had no basis for her conclusion, alleging that she relied on statements of TSI's direct competitor, Aegis, to support her finding that TSI could not attract an experienced workforce rather than discussing the issue with TSI.  Plaintiff argues that it draws from a separate pool of experienced workers, making the statements by Aegis about its own difficulty finding and retaining employees irrelevant.

     Given the above-noted evidence, the court finds that there are genuine issues of material fact that preclude an award of summary judgment to either party.  Whether the CO abused his discretion in terminating the TSI contract and thus breached the contract will turn on whether there is objective evidence to support the reasons set forth in the J&A to sole-source the work to Aegis.  The objective bases for the termination decision are now in doubt based on the evidence produced by TSI.  At trial, the court will have to determine whether the government's decision to terminate TSI because TSI could not

provide the services was rational based on the objective evidence that was available to the CO at the time.

The cross-motions for summary judgment are therefore **DENIED**.  The parties shall file a joint status report with the court including a proposal for next steps in this litigation by **October 10, 2014**.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge
